Thank you. May it please the Court and good morning. My name is Joe Wintage with the Littler-Mendelson Law Firm, and I represent Ahern Rental. Ahern is asking this Court to overturn two orders from the District Court. The first, the dismissal of defendant EZ Equipment Zone, and the other, the motion for judgment on the pleadings involving EquipmentShare. Now this is a unique case where Ahern is alleging that the defendants have continued to exploit Ahern's misappropriated confidential, proprietary, and trade secret information within the equipment rental industry, and that they've done so through EquipmentShare's direction and control of the operations of EZ for the purposes of evading the multiple prior lawsuits that Ahern had filed against EquipmentShare with respect to the initial misappropriation of the trade secrets. Based on the applicable standards within the complaint, Ahern has plausibly pled causes of action for unjust enrichment, trade secret violations, and civil conspiracy. As a result, the Court erred when it issued those orders. We're asking you to overturn those orders and to allow this case to proceed into discovery. Now one of the things I think is important when we talk about why this case is unique is to look at the specific facts. As you're aware from the briefing of the parties, this is one of many cases that are going on between Ahern and EquipmentShare. But this one is distinct because it doesn't focus on the initial misappropriation. What it does focus on is the exploitation of that misappropriated trade secrets, which is different and separate from anything else that's alleged in the, I believe it's over 21, some odd cases that are still pending in the MDL. Now where does that uniqueness come from? If you look at what's alleged within the complaint, and specifically the exhibits that we've identified, there are numerous documents in there, most of which were pulled from EZ's own website, which articulates the nature of the relationship between these two parties. And what it shows you is that if you are, if an individual is an EZ client and they want to purchase rental equipment, they can only do so if EZ tells them what equipment to buy. And EZ makes clear, both in its asset management agreement and also its FAQs on its website, that those decisions are being guided by its master rental agreement with the national rental company, which is EquipmentShare. And as we've alleged, the information that EquipmentShare was using came from the misappropriated information from AHERT. So not only is the equipment directed by EquipmentShare, that's purchased and directed by EquipmentShare, but then also where it's placed within the market. It specifically stated that once the individual has bought equipment, that EZ, through the information that it receives directly from EquipmentShare, is going to tell that individual where its equipment is going to be placed within the market. Once it's there, then it's tracked and monitored and to the extent financing is needed, all of this is done through EquipmentShare. So the district court qualified this as a close business relationship. And I would submit to you that this is far more than simply a close relationship. This is, in fact, EquipmentShare directing the operations. How EZ is going to do its job. It's in the cooperative rental business. So everything having to do with the rental is coming from EquipmentShare. And as we've alleged upon information and belief, that information that was supplied to EZ from EquipmentShare used the AHERT information that had been previously misappropriated as we've established in our complaint. So what you want to do then is take discovery to, in your view, confirm that this information was shared? That's exactly right. between EquipmentShare and EZ and then that would further your claims? Yes. So essentially why this is different is because we're talking about the indirect attempt by EquipmentShare to continue to exploit that information, which is different. All the other cases in the MDL primarily focus on the direct taking. Former AHERT employees who took information from AHERT at the behest of EquipmentShare and then EquipmentShare directly benefited from it by taking AHERT's former clients and obviously the revenue and the profit that generated as a result. What we're saying here is that . . . I think everybody understood that. The district court understood that, I believe. She just thought that the allegations were too speculative as I read the . . . That is what you found and that's why we're here, Your Honor. We disagree with that opinion. And I think it really goes back to one of the things that the court failed to take into consideration was the notion of this difference. This is an indirect action. This was after AHERT had filed numerous suits. So that's what really distinguishes it. What we're alleging is EquipmentShare then, in response to those lawsuits, partnered with EZ to try to continue to accomplish that same goal in a different way that hadn't been previously done. So these are different complaints or different allegations. And I think when we look at it with respect to the court, it had a problem with the use of the upon information and belief. And we think that decision was improper because this court has recognized multiple times that it's plausible to allow upon information and belief. And that's what we've done here. The rule of Civil Procedure 11 allows us to do that so long as we say in the complaint that we'll find it through the discoverer. And that's what we've alleged. And in addition to that . . . Do you think this fits the case law that says where facts are uniquely in the possession of the defense . . . I think it is, Your Honor. . . . upon information and belief is more palatable? Absolutely. Yeah. And the case I think you're referring to is the Wadd case that was mentioned . . . Well, I was thinking of that Second Circuit, the Arista Records case, which seemed to have led to several others, but . . . Exactly. Yeah. That is the correct case, Your Honor. And that is exactly what we're alleging here, essentially that this is a cover-up. And so once Ahearn had filed the initial round of lawsuits, Equipment Share is trying to continue to do the same thing in a different way. So of course the information that would show that Equipment Share was giving this information too easy for that purpose is not going to be generally known. That's not going to be on the website, and we wouldn't expect it to be. But what it . . . Do we still need to plead facts on which this belief was founded and not just conclusory statements? Absolutely, we do, and we believe that we've done so, Your Honor. So the combination in our complaint is really two-fold. One, it's the initial basis of the taking of the trade secret information, which really isn't disputed at this point, Your Honor, for the purposes of the allegations being accepted as true. And then once that foundation is set, then the pivot to what was done with it by Equipment Share through EZ. And so what we've alleged is similar to the CGB diversified services case, very similar there, where there was factual allegations that were concrete that were established showing that the taking had occurred when the individual raided the data and the trade secrets from the former employer, started a competing company. What the district court there said from the Eastern District of Missouri was that there was less facts surrounding the use, the exploitation of those trade secrets. But the court there found specifically that the combination of those two, showing the taking, then also alleging upon information and belief the exploitation, makes it plausible that those actions would have occurred, and as a result, the court there dismissed or in this case. Well, why don't you enumerate precisely the key allegations that you think are in the complaint that support a plausible inference of this cover-up, as you call it? Of course. So I think there's three main sections in our complaint that deal with that. The first would be in paragraphs 18 through 33. Those identify how the confidential information at Ahern was protected, the steps that it The second would be in I'm talking about the non-speculative allegations of the relationship between EZ and Equipment Share that you say are sufficient to support a plausible inference that the two were in cahoots and engaged in a cover-up. Of course, yes. So those would have to be with the exhibits and also with the sections that talk about the nature of their relationship. And so what we're alleging is that based on how closely these two were working together, if you look, for example, at the asset management agreement that EZ has, if you look, for example, at the financial applications that it provides to its customers, all of these are exhibits in our record, Exhibit 3 and Exhibit 5, Exhibit 8, the FAQs, talk to potential EZ customers about what that process is going to look like. All of those make clear that the information that EZ provides to its customers comes from that national rental company, which is Equipment Share. So it's plausible to suspect that if the information that EZ is using to do its job comes from Equipment Share, buying equipment, placing it in the market, that they're going to be using the information they took from Ahern's Texas office when they're trying to decide if they're going to place that equipment somewhere in Texas. So the combination of those two things is what allows us to make a plausible claim for And to pivot to unjust enrichment, there's another important point here, which I think the District Court failed to appreciate, which is that unlike the trade secret requirements for showing someone knowingly or reasonably should have known that they were using trade secret information, unjust enrichment doesn't even have that requirement. All that's required for an unjust enrichment claim to be plausibly pled is that a benefit was conferred onto a party and that it was received by the defendant in circumstances that it would have been inequitable for them to be able to hold onto that. And that's what we've alleged here. If you look at both the Quest Communications case that we cite and the Cystic Fibrosis Pharmacy cases there, those are specific cases where the Eighth Circuit and the District Courts have recognized that even in a situation where the defendant is obtaining a benefit through a third party, that still provides an opportunity for an unjust enrichment because that defendant is still receiving the benefit of that ill-gotten gain. For example, again, the Cystic Fibrosis Pharmacy case dealt with Express Scripts, the defendant canceling contracts with the plaintiff for the purposes of redirecting the pharmacy work to pharmacies that Express Scripts owned. And so there, Express Scripts was indirectly benefiting from the decision it made to cancel that contract and the case was allowed to proceed into discovery to determine to what extent Express Scripts actually benefited from the decisions that it made with respect to the cancellation of those contracts. So whether we're looking at unjust enrichment or the trade secret violations, we have essentially done enough. We've plausibly pled causes of action that are unique to this claim that are not otherwise covered within the cases in the MDL. And the danger here is if this case is dismissed, not overturned on appeal, then there would potentially be damages to AHERN that would not be covered in any of the other cases. The uniqueness of this case is, again, that the expressed intent by the parties to get around the prior lawsuits, those facts and that exploitation simply isn't covered anywhere else. I was just going to note that you're in your rebuttal time and you're welcome to save the balance, but you may continue as well. No, I appreciate it. Thank you. I will save the remainder of my time unless there are any further questions. Thank you for your argument. Thank you. All right. Mr. Graham, are you Mr. Graham? Yes, Your Honor. You're going to argue first.      Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Counsel. My name is Phil Graham. I represent EZ Equipment Zone. And the Court should affirm the District Court. The District Court got this right. The reason the District Court got this right is because the allegations are simply not enough to satisfy the pleading standard against EZ. The pleading must state a factual basis that provides for a reasonable inference of a plausible claim. That's where this falls down. There is a factual basis alleged that EZ and Equipment Share have a business relationship. However, that's where it breaks down. It then jumps to conclusions, conclusory statements that really amount to setting forth the elements of their claim or the legal conclusions that undergird their claims, which are then based upon information and belief. And information and belief does not convert a conclusion to a fact. I would also like to address up front the argument that the information was all within the defendant's control. That isn't true either. This is a trade secret case. What did you say that is a what? I said that is not correct. It is not all within the defendant's control, the information that would undergird their claims against us. This is a trade secret case where Ahern Rentals knows very well what trade secrets and other information it is claiming was taken from it by its former employees. There is nothing in this complaint, and this is what makes it different from many of the other cases cited, is there is nothing specific about what was taken, who is no longer doing business with them, what employees were involved. There are none of those allegations that are specific in this case. So it is very different from the cases that Ahern cited in its brief. I would also point out that But isn't the information about the working relationship between EZ and equipment share uniquely? Well, they've been in the realm of what the defendants know, and isn't there Well, that's my first point. Sure. And the second point would be there. Well, go ahead. Sure. Well, I would address that by saying there isn't any case law cited that would provide for a cause of action against EZ merely for doing business with equipment share. But they aren't alleging that that's the wrong. Well, that's They're alleging that EZ is using information that they obtained from equipment share that was misappropriated from Ahern, and those are facts, aren't they? Well, the way they pleaded, it's conclusory, Your Honor. There is no who, what, why, where, and when, no factual basis pleaded in those paragraphs about how or when we did this or what it has affected. They ought to You mean they didn't allege when you got the information from equipment share? That would be one example. They didn't allege what customer it impacts, what information is impacted. For example, in the Design 9 case, I believe it is that they cited, the plaintiff in that case cited some specific information that the employees took and then used to form their own business. We would submit that all of the cases are different that they cited, that none of the cases, also to answer your question, that none of the cases they cited would permit liability against a third party doing business with a company such as equipment share who is alleged to have been involved in taking the trade secrets of its competitor. There just simply aren't any direct cases that would permit that that's been cited in their brief. Well, I don't know whether they need a case or not. The question is just kind of applying Iqbal and Twombly to this complaint. I don't think we need to have a case where it's happened before, so it's kind of a fact specific application of the legal standard and the question is whether they've plausibly alleged. It certainly is, Your Honor. I agree with you that Iqbal and Twombly are the principle cases and the principles that most apply here. But again, to allege something that's more than conceivable is what is required. It has to be nudged to plausibility. Certainly, is it conceivable? Why isn't it plausible that if you're doing what they say you're doing in a relationship with equipment share, that you would be using the information that equipment share allegedly took from Ahern? Well, we have to submit on that, Your Honor, is that what they have alleged is that there is a relationship between these two parties. No doubt, no question about that. They have alleged that we are basically a company who procures equipment owners that are then enrolled into the equipment share platform to rent equipment nationwide. That much is not in dispute. Then they jump to simply saying upon information and belief, EZ has improperly used information obtained by equipment share. It's there that it falls down. There has to be some other plausible information there such as something specific about what was taken. EZ knows, I'm sorry, Ahern knows what was taken, Your Honor. It knows what it's missing or it knows who it's not doing business with. It knows what its pricing was. That's completely lacking in this complaint. This is only an attempt to really bootstrap EZ into the liability here based on the allegations against equipment share and Ahern's former employees. There is no specific allegation that would What's an example, if you can help us with that? Based on what they know, what do you think they should have been able to allege if another party was benefiting from the information equipment share took? Sure. Thank you, Your Honor. What I would suggest, Your Honor, is that they could have alleged that they were doing business with ABC Company through employee John Doe, that John Doe left, that ABC Company is no longer doing business with them, that John Doe knew the pricing information for ABC Company and they could have alleged that type of specific and they could have alleged the specific pricing information that was taken from it that is now being used allegedly by EZ. But all they do is simply allege we're doing business with equipment share. Therefore, we must be using information improperly. And we would submit that there has to be more than that to overcome the hurdle on a motion to dismiss here to state a plausible claim. And I would suggest that maybe this goes beyond Iqbal and Twombly simply because it is a third party. All of the cases cited really involve direct theft, direct misappropriation by employees who leave a company and go to another. That's what happened in CBG. That's what happened in Design 9. That's what happened in each of those cases that are cited. And so here, that's what's missing. We do not have any factual basis pleaded that connects the two. It simply jumps from a factual basis of there's a business relationship, we're doing business with equipment share to, therefore, we must be doing something improper. We must be using their information. That is simply a bridge too far without some factual basis to connect the two. And that's what's missing from this complaint. And that's why the district court got this right. So, Your Honor, we would request that the court affirm the district court's order dismissing EZ. Thank you. Very well. Thank you for your argument. Mr. Birch, we'll hear from you. Good morning, and may it please the Court. My name is Alexander Birch, and I represent AppaleeEquipmentShare.com, Inc. As the Court is aware, this case is one of many cases between Ahearn and EquipmentShare. And this one is not unique. By my count, eight Federal judges have disagreed with Ahearn on the uniqueness of this case. Ahearn lost that argument when it lost the challenge to the transfer of this case to the MDL court below. And it lost it again before the district court when the district court reviewed the sufficiency of the claims as to EZ. And a third time when the court dismissed the claims against EquipmentShare because this case is duplicative of the numerous other claims Ahearn asserts against EquipmentShare in many of the other cases. Particularly the RICO case and every case that it actually cites to in its pleading in this case. Counsel, can you answer a factual question? Can you explain the difference between the business model of EquipmentShare and that of EZ? Your Honor. What's the difference between what those two companies do? I don't know anything beyond what's been alleged in the pleadings. And that is that EquipmentShare uses an online model, a portal if you will, to help source equipment for customers who need it. Rather than owning the equipment itself, it pairs different businesses with different businesses and they can share each other's equipment. I believe EZ does something similar, but I don't know the particular nuances of the cases as to why those or how those are particularly different. Well, doesn't the complaint pretty plainly allege that they do essentially the same thing? Or at least together they constitute this particular business model that's competitive with Ahearn? Your Honor, the complaint does do that. If the issue is that EZ is simply an agent or it's also or some sort of other EquipmentShare entity, then this case is already before the MDL court in the RICO case. The RICO case actually names rogue corporations, unidentified businesses that Ahearn alleges that EquipmentShare did business with and that also harmed Ahearn. It simply just put a name to that entity in this business, in this case. Well, that's not why the claim against EZ was dismissed here, though. The district court didn't say that claim was dismissed as duplicative. No, it did not do that, Your Honor. Only the remaining part. That's correct. It dismissed the claims, remaining claims as to EquipmentShare as duplicative. That's primarily the argument I have, but I'm happy to address the EZ issues as well since the only allegations against EZ, and I listed them here, is that the software EZ uses is owned by EquipmentShare. EZ's agreements authorizes EquipmentShare to direct what equipment is rented. EquipmentShare's logo is on EZ's website. EZ has videos that include EquipmentShare's logo and that EZ and EquipmentShare have a contract to do business together. That's it. Those are the allegations. Those are the close business relationship. It also says EZ is using the confidential information that EquipmentShare illegally. That's right. On information and belief, it alleges that, but it could say that about any entity that EquipmentShare does business with. It could just find that EquipmentShare has a contract with some other business entity and then just allege, well, we think that they are using our trade secrets because, well, we have all these other cases that say that EquipmentShare is doing so. Just because it has a business relationship, it must be using our trade secrets as well. There must be something more. Under Twombly and Iqbal, there must be something more than just the conclusory statement that we think they are doing so. That's all you have here. It's pure speculation. Is this the only action? It talked about the other lawsuits that are in the part of the MDL that mention rogue, unidentified corporations. Is this the only action that does name an additional party other than EquipmentShare? To answer directly, no. It's not the only case that answers a different party. If you mean, is it the only case that asserts a claim against another business entity? Yes. I believe that's correct. That's alleged to be in close operation with EquipmentShare. This is the only case I'm aware of that actually names another business entity. As I mentioned before, the RICO case specifically says that, and I quote, rogue corporations are responsible in some manner for the events and happenings herein referred to and caused injury and damages approximately thereby to plaintiffs as herein alleged. It alleges all the trade secret claims, et cetera, in that case. That's really all you have in this case other than identifying. The point of my question, if the court were to find that the district court improperly dismissed this action and that it should go forward on the complaint, wouldn't that in and of itself be a reason that it should be found to be not duplicative? I believe the answer to that is no, Your Honor. In fact, an opinion written by Judge Colleton and Albert B. Carter sort of helps us with that analysis in that simply by having another party named in the case doesn't preclude dismissal under sort of raised judicata, sort of similar types analysis. And, Your Honor, the Albert B. Carter case dealt with a first lawsuit against unnamed police officers who allegedly committed harassment and false imprisonment. And then a second lawsuit was filed after the plaintiffs missed their deadline to amend their pleadings. The second lawsuit was filed actually naming some of the police officers. And this Court held that the second lawsuit could be dismissed under raised judicata purposes. That case was a little bit further along because the case afterwards, after denying their ability to amend their petition in the first case, the case was dismissed for failure to state a claim. But on the question of duplicative litigation here, I thought the district court's ruling was premised on the fact that E.Z. had been dismissed. That's correct, Your Honor. She said with what's left now, it's duplicative. But if the claim against E.Z. were reinstated, wouldn't that? The court did not analyze the case in terms of. Wouldn't it have to go back then for the judge to reconsider whether equipment share should also be in the case? I think that's accurate, Your Honor. I think that's exactly right. Under the hypothetical, the court could have dismissed it as duplicative. In this case, it did not do so in considering E.Z.'s claims because they were already out of the case nine months prior. It didn't have to do that analysis. It could go back, look at the RICO complaint and say, well, as I look at the RICO complaint, you've already got business entities listed here that you claim were conspired with equipment share to do these bad acts. That case, that's the one that should move forward. This case should not. It could make that analysis. Well, that would be your argument, maybe. That's right. But that's not the ruling before us. That's not the ruling before you. That's correct. Okay. I see my time is up, Your Honors. If there's no further questions, we ask that the Court affirm both orders. All right. Thank you for your argument. All right. We'll hear rebuttal from Mr. Windage. Thank you. Just to follow up on a few brief points, including the last one that Equipment Share just made, this is not a duplicative case. It's impossible for this to be a duplicative case because the facts that gave rise to our case didn't happen until after Equipment Share started reacting to the original lawsuits that AHERN filed. So, again, as we've alleged, Equipment Share starts taking information from AHERN. AHERN reacts by filing all these lawsuits throughout the country. Then Equipment Share starts to work with EZ in a different way. Again, it's for the purposes of getting around those lawsuits to continue to exploit that information. So unlike the cases that were cited by Equipment Share that talks about duplicative cases where they are the same facts, these are different in time. I would direct you to, again, the case that they cited too, the WAD case that says that the doctrines of claim splitting and duplicativeness don't apply if they're not ripe at the time the first suit is filed. And that's the exact situation that we have here. So there was no duplication of facts. The other thing I think is important to notice here too is that the primary interest that AHERN has right now is making sure that Equipment Share doesn't have a method to evade court review. And if the dismissal and the judgment of the pleadings is upheld here, then any of the work that they did, which we allege was problematic, would escape any further review. We have attempted to get discovery with respect to what EZ actually did in terms of engaging with that misappropriated information. As you've seen from the record, we have not been able to get that. And none of the other cases that remain in the MDL, including the RICO case that was mentioned by counsel, actually provide an opportunity for us to get into that issue. What did Equipment Share do with the help of EZ to exploit that information after AHERN started defending itself? It's simply not anywhere else. So to say that it's duplicative just doesn't reflect the facts of this case. Also, to respond to the argument from EZ, they seem to focus primarily on the issue of the taking and saying there's no allegations that EZ was involved in the taking, the misappropriation in the first place. And that's not required for us to maintain causes of action against EZ. Under both the unjust enrichment theories and the trade secret violations, if EZ is receiving a benefit that they weren't entitled to in unequitable situations, as alleged, and under the low bar that is the Iqbal-Tuamwe standard, then we are entitled to proceed into discovery to see whether or not we could substantiate those allegations with the evidence we would find. So the focus here isn't on the taking. What do you say to the argument that you should have been able to make more specific allegations of the kinds that were suggested here? Yeah, I would say in response to that, Your Honor, that we're alleging essentially that this is a workaround. So we didn't have that information. We know from the other cases the specific files that were taken, the specific clients that were lost related to the individuals who left AHRQ branches and started equipment share branches. What we don't know is then how this information was continued to be filtered. Going back to my example. Is there anything from what EZ is doing publicly that should allow you to know whether they've used equipment share? Yeah, so I think that's an interesting point. And I think the fact that counsel mentioned that essentially what EZ does is it recruits owners, right? It recruits owners and it puts them into equipment share system. So this is finding new ways for equipment share to exploit that information. This is not taking AHRQ's clients directly from AHRQ, but it's using that information of they know the market. They know the costs. They know the pricing. If you want to rent a Lyft in Houston, Texas, they know what that looks like now because of the information they took from AHRQ's Texas branch. Using that, they can now get new customers in Texas. So that would still be an improper benefit both to equipment share and to EZ and is different from what's alleged in the NDL and is something that we should be allowed to review, proceed, and investigate further in discovery. I see I'm out of time, so unless there's any other questions. Thank you for your argument. Yeah. The case is submitted and the court will file a decision in due course. Thank you to all counsel for your arguments this morning. Counsel are excused.